Filed 10/22/15  P. v. Turner CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DANIEL JAKE TURNER,<br><br>    Defendant and Appellant. | F068801<br><br>(Super. Ct. No. MF10818A)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Kane, Acting P.J., Franson, J. and Smith, J.

## INTRODUCTION

Appellant Daniel Jake Turner was convicted by jury of second-degree robbery (Pen. Code, § 212.5, subd. (c), count 1) and assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4), count 2). In addition, the jury found true various enhancement allegations against appellant. Appellant was sentenced to an aggregate term of 19 years in prison.

Appellant contends the prosecutor committed prejudicial misconduct during her closing argument by improperly vouching for witnesses. He asserts that although he did not make a timely objection or request an admonition, the issue is reviewable because either would have been futile. We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

### Prosecution Case

On October 1, 2013, Yun He Schmidt was working at her recycling business with her employee, Jahari Currie. Appellant, who came into the business every day, brought cans and bottles in that morning to redeem for cash. Appellant asked Currie when he took his lunch break and Currie replied that he usually took his lunch around noon.

Both Currie and Schmidt testified that appellant, whom they identified at trial, returned to the business later that day. Although Schmidt could not recall precisely when appellant returned, Currie testified that it was around 12:15 p.m. Appellant told Schmidt and Currie that he left a diamond ring in a bag he used to bring in recyclables. Schmidt replied that the bag appellant was looking for should be in the trash, both Currie and Schmidt helped appellant look for the ring. Schmidt asked appellant whether he was sure he had a ring and appellant replied affirmatively. Schmidt then recalled waking up in a hospital emergency room, with no memory of what happened in the interim.

While looking for the ring, Currie saw appellant and Schmidt talking and then observed appellant punch[1] Schmidt in the face, rendering her unconscious. Appellant took a key out of Schmidt's pocket and ran into an office inside the business. Currie reached through a window in the office and picked up a phone to call the police but appellant took the phone out of Currie's hand. Appellant proceeded to take money from a cash register in the office. A brief struggle ensued before appellant fled on a green bicycle. Currie called 911.

On October 1, 2013, at 12:20 p.m., Kern County Sherriff's Deputy Orlando Ramos responded to the incident. Currie related his version of events to Deputy Ramos and provided a description of the suspect. Based upon Currie's description, and Deputy Ramos's familiarity with the residents in the nearby area, Deputy Ramos suspected appellant was the perpetrator. Currie identified appellant pursuant to a photo lineup, and again at trial. After he was arrested and *Mirandized*, appellant admitted visiting the recycling center twice on the day of the robbery, but denied any knowledge of a physical altercation.

*Defense Case*

Appellant's parents, Isaac and Patricia Turner, testified in his defense. Mr. Turner testified that on October 1, 2013, he and his wife drove to Lancaster at approximately 9:30 a.m. or 10:00 a.m. When they left, appellant was at the family home. When the Turners returned home around 1:00 p.m. or 1:30 p.m., appellant was still there. Mrs. Turner offered testimony similar to Mr. Turner's. Both Mr. and Mrs. Turner testified Currie and appellant are personally acquainted.

Appellant, who testified in his own defense, acknowledged prior felony convictions, as well as a misdemeanor conviction, for crimes of moral turpitude. He testified that on the morning of the robbery, he made two trips to the recycling center.

---

[1] Currie described the punch as a "sucker punch."

3

During the first trip, appellant returned home around 9:30 a.m., he left for the recycling center a second time between 10:00 a.m. and 10:30 a.m., and stayed no longer than five minutes. Appellant denied any involvement in the robbery. He testified that he was home making his siblings lunch during the lunch hour that day. Appellant also denied telling Currie and Schmidt that he lost a ring during his second trip to the business.

## *People's Rebuttal*

Kern County Sheriff's Deputy Jonathan Juden testified that he went to appellant's home at approximately 12:30 p.m., looking for him. Neither appellant, nor his green bicycle, which he usually kept outside, could be located.

## DISCUSSION

Appellant contends that the prosecutor improperly vouched for the credibility of witnesses during trial. During closing argument, the prosecutor commented that Schmidt, Currie, and Deputy Juden have no convictions for felonies or crimes of moral turpitude and no incentive to lie. The prosecutor also commented that Deputies Ramos and Juden have years of experience as sheriff's deputies, and no reason to lie.

While we are not persuaded any of the remarks amounted to vouching, we can find no prejudice. Prosecutorial misconduct requires reversal only if it results in prejudice to the defendant. (*People v. Fields* (1983) 35 Cal.3d 329, 363.) Where it infringes upon the defendant's constitutional rights, reversal is required unless the reviewing court determines beyond a reasonable doubt that the misconduct did not affect the jury's verdict. (*People v. Harris* (1989) 47 Cal.3d 1047, 1083.) Prosecutorial misconduct that violates only state law is cause for reversal when it is reasonably probable that a result more favorable to the defendant would have occurred had the prosecutor refrained from the objectionable conduct. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1133.)

To preserve a claim of prosecutorial misconduct for appeal, defense counsel "must make a timely objection at trial and request an admonition." (*People v. Price* (1991)

4

1 Cal.4th 324, 447.)  The issue is otherwise only reviewable if either a timely objection or a request for admonition would have been futile, or if a request for jury admonition "'''would not have cured the harm caused by the misconduct.'''"  (*People v. Hill* (1998) 17 Cal.4th 800, 820 (*Hill*).)

Here, defense counsel did not make an objection or request a jury admonition in response to the prosecutor's closing argument.  Nonetheless, appellant contends that he should be excused from the necessity thereof because either an objection or jury admonition would have been futile.  We disagree and find that the issue is forfeited on appeal.

In *Hill*, the court determined, in relevant part, whether the appellant's claim of prosecutorial misconduct was preserved for review on appeal where no objection was made and an admonition was not requested.  (*Hill, supra,* 17 Cal.4th at p. 820.)  The *Hill* court ruled the appellant did not waive his claim, reasoning any objection or request for an admonishment would have been futile.  (*Id*. at p. 822.)  The court specified the prosecutor's barrage of unethical misconduct, in conjunction with repeated chastising comments by the bench, would have subjected defense counsel to the risk of "repeatedly provoking the trial court's wrath" and prejudicing the jury toward the defendant had defense counsel made a timely objection.  (*Id.* at p. 821.)

Considering this same issue, the court in *People v. Alvarado* (2006) 141 Cal.App.4th 1577 (*Alvarado*) found that an admonition would not have been curative where the prosecutor vouched for the integrity of her office as well as the one eyewitness to the crime.  During her closing argument, the prosecutor remarked "'I have a duty and I have taken an oath as a deputy District Attorney not to prosecute a case if I have any doubt that that crime occurred.  [¶]  The defendant charged is the person who did it.'"  (*Id.* at p. 1585.)  The impermissible inferences from the prosecutor's remarks were that "(1) the prosecutor would not have charged [the defendant] unless he was guilty, (2) the jury should rely on the prosecutor's opinion and therefore convict him, and (3) the jurors

5

should believe [the witness] for the same reason." (*Ibid.*) In finding that an admonishment would not have been curative, the court reasoned that because the case turned on the credibility of the one eyewitness, who identified the appellant based on a single brief encounter, it was too late to "unring the bell sounded by the prosecutor's improper attempt to bolster his credibility." (*Id.* at p. 1586.)

The instant case is distinguishable from both *Hill* and *Alvarado*. In *Hill*, there were repeated instances of prosecutorial misconduct and the appellate court found objections by the defense would have served only to further provoke the bench; whereas here, appellant alleges only one instance of misconduct, the prosecutor vouching for the credibility of witnesses. In addition, there is no evidence that an objection by defense would have invited critical comments from the bench, prejudicing the jury against appellant and rendering additional objections futile. As such, appellant cannot establish that he should be excused from making a timely objection or request for admonition.

The instant case is distinguishable from *Alvarado* given the overwhelming evidence presented against the defendant in this case. Here, even assuming Currie and appellant were not personally acquainted, appellant visited the business every day. Currie's repeated encounters with appellant would make his identification more reliable than the witness in *Alvarado*, who had only a single brief encounter with the appellant. (*Alvarado, supra,* 141 Cal.App.4th at p. 1585.) Further, Deputy Ramos also suspected that appellant was the perpetrator of the robbery based on the description of the suspect provided by Currie, and Deputy Ramos's familiarity and frequent contacts with the residents within the small community.

We also find that the testimony of two independent witnesses casts doubt on the veracity of appellant's version of the events. Appellant testified that he did not return to Schmidt's recycling business under the pretense of searching for a lost ring. However, both Schmidt and Currie's testimony directly contradict appellant's claim; both claim appellant returned to the business a second time, claiming he lost a ring.

Police were also unable to verify appellant's whereabouts during the robbery. Appellant testified he was home during the lunch hour on the day of the robbery; however, neither him, nor his bicycle, were located at his home when police arrived at 12:30 p.m. Although appellant's parents testified he was home when they left the family residence around 9:30 a.m. or 10:00 a.m., and when they returned at 1:00 p.m. or 1:30 p.m., they could not confirm his whereabouts in the interim, when the robbery occurred.

In light of Currie's positive identification of appellant, a man who regularly came into the business; appellant's testimony, which contradicted the account of two independent witnesses to the robbery; as well as appellant's inability to verify his whereabouts at the time of the robbery, the evidence presented against him was overwhelming. As a result, even if the prosecutor's remarks were improper, we can find no prejudice to appellant.

## DISPOSITION

The judgment is affirmed.